IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JENNIFER R. REYNOLDS,

                Plaintiff,

vs.                                    Case No. 15-2676-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On November 5, 2013, administrative law judge (ALJ) Timothy G. Stueve issued his decision (R. at 12-22). Plaintiff alleges that she had been disabled since May 1, 2010 (R. at 12). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2015 (R. at

14).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 14).  At step two, the ALJ found that plaintiff had a severe
combination of impairments (R. at 14).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 14).  After determining plaintiff's RFC
(R. at 16), the ALJ found at step four that plaintiff could not
perform past relevant work (R. at 21).  At step five, the ALJ
found that plaintiff could perform other jobs that exist in
significant numbers in the national economy (R. at 21-22).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 22).

III.  **Are the ALJ's RFC findings supported by substantial
evidence?**

       According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved.  The RFC assessment must
always consider and address medical source opinions.  If the RFC
assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.  SSR 96-8p,
1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20

C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Sharon Lynch is plaintiff's treating neurologist.  As noted above, the opinions of treating medical sources are generally entitled to greater weight.  On December 5, 2012, she wrote two letters regarding plaintiff.  They are as follows:

> Ms. Reynolds is being followed in the Neurology Department of the University of Kansas Medical Center for care and treatment of multiple sclerosis.  As a result of this disease process, Ms. Reynolds has significant deterioration in memory and cognitive skills.  These deficits do not make her eligible for gainful competitive employment.

(R. at 613).

> I am writing in regard to my patient Jennifer Reynolds diagnosed with Multiple Sclerosis and Tourette's syndrome.  She is unable to obtain employment due to severe cognitive difficulties.  She has difficulty following simple task, remembering task and instructions.  She has undergone neuropsychology testing and the results substantiate her disabilities…

(R. at 384).

The ALJ gave these opinions "no weight," as they are not consistent with the evidence from Dr. Lynch and her staff indicating that the claimant had "no problems with memory,

speech or expression (Ex. 21F/2,10)" (R. at 20).  Furthermore,
according to the ALJ, the opinions of Dr. Lynch are not
consistent with the objective neuropsychological testing showing
normal cognitive functions in all areas (R. at 20).

The documents cited by the ALJ (Ex. 21F/2,10) state under
mental status exam: plaintiff has "normal short and long term
memory.  Language functions are normal both for comprehension
and expression (R. at 638, Apr. 4, 2013); "There is normal short
and long term memory.  Language functions are normal both for
comprehension and expression" (R. at 646, Nov. 16, 2012).
However, not mentioned by the ALJ is this statement contained in
the first medical report:

> She continues to have a lot of difficulty
> with cognitive problems.  Very scattered
> thinking with difficulty with word finding.

(R. at 638).  In the second medical report, the ALJ failed to
mention that the ALJ also found "Some scattered thinking" (R. at
646).

It is improper for the ALJ to pick and choose among medical
reports, using portions of evidence favorable to his position,
while ignoring other evidence.  Keyes-Zachary v. Astrue, 695
F.3d 1156, 1166 (10th Cir. 2012); Hardman v. Barnhart, 362 F.3d
676, 681 (10th Cir. 2004).  An ALJ cannot simply cherry-pick
facts that support a finding of non-disability while ignoring
evidence that points to a disability finding.  Denton v. Astrue,

596 F.3d 419, 425 (7th Cir. 2010).  It is clear from the record
that the ALJ cherry-picked statements from Dr. Lynch's records
in support of the ALJ decision to accord no weight to the
opinions of Dr. Lynch while ignoring other statements in those
same medical records indicating that plaintiff is having a lot
of difficulty with cognitive problems and very or some scattered
thinking.  Those statements ignored by the ALJ provide support
for Dr. Lynch's opinion that plaintiff is unable to work due to
severe cognitive difficulties.

Dr. Lynch also stated that neuropsychology testing
substantiates her disabilities (R. at 384).  However, the ALJ
asserted that the objective neuropsychological testing showed
normal cognitive functioning in all areas (R. at 20).  Dr. Kobes
performed a neuropsychological assessment in August and October
of 2010 (R. at 286-303).  The ALJ summarized the assessment,
noting normal limits across all cognitive domains, plaintiff's
ability to understand and perform test demands was satisfactory,
the ability to sustain concentration and task attention was
satisfactory, and that the test results did not show problems
with attention (R. at 18-19).

Testing did not suggest problems with attention (R. at
290).  They showed a normal ability to pay attention and to
maintain that attention over time (R. at 291).  Other testing
indicated that plaintiff is not showing evidence of forgetting

(R. at 293).  However, the Personality Assessment Inventory showed a picture of "significant psychological distress" which is consistent with both conversion and somatization disorders (R. at 301).  Dr. Kobes also stated that plaintiff is experiencing:

> …a disturbingly high level of anxiety along with physical signs of tension and stress such as sweaty palms, trembling hands, irregular heartbeat, and shortness of breath.  She is likely to have an elevated level of problems with confusion, indecision, distractibility, and poor concentration.  Additionally, she is likely experiencing a significant depressive experience with thoughts of worthlessness, hopelessness, and failure.  She is likely to have consistent fears of abandonment and rejection.  Her self-concept is likely to be very poor and she is likely to be very sensitive to slights and oversights by others.

(R. at 301-302).  In his summary, Dr. Kobes found that objective measures for cognitive functioning were within normal limits across all cognitive domains (R. at 303).  However, Dr. Kobes went on to state:

> AD(H)D rating scales completed by the examinee and her spouse strongly suggest problems with attention deficit disorder.  Additional measures of clinical pathology show strong indications of problems with anxiety, depression, with the suggestion of conversion and somatization disorders.  It is worth noting that the DSM-IV criteria for AD(H)D are not organized in a neuroanatomically meaningful fashion and do not necessarily coincide with objective measures of neurocognitive functioning.  It

> is quite possible that the examinee is
> neurocognitively intact, as the data shows,
> yet can still meet the DSM-IV behavioral
> criteria for AD(H)D.  Additionally, strong
> symptoms of anxiety and depression, coupled
> with personality features of emotional
> sensitivity and mild ego strengths may make
> the examinee more vulnerable to physical
> manifestations of stress.

(R. at 303).

Again, the ALJ has cherry-picked the information contained
in the assessment by Dr. Kobes.  It is true, as Dr. Kobes
stated, that the objective measures of cognitive functioning
were within normal limits across all cognitive domains.
However, the ALJ failed to mention that the Personality
Assessment Inventory showed "significant psychological
distress," "a disturbingly high level of anxiety with physical
signs of tension and stress," an "elevated level of problems
with confusion, indecision, distractibility and poor
concentration," and "significant depressive experience" with
thoughts of worthlessness, hopelessness and failure, and
consistent fears of abandonment and rejection (R. at 301-302).
Dr. Kobes concluded by noting that although the objective
measures of neurocognitive functioning is intact for the
plaintiff, she can still meet the criteria for AD(H)D, and that
strong symptoms of anxiety and depression, coupled with
personality features of emotional sensitivity and mild ego

strengths may make the examinee more vulnerable to physical manifestations of stress.

Dr. Lynch stated that the testing by Dr. Kobes substantiates her disabilities.  The ALJ erred by only using portions of the report from Dr. Kobes that supported his position, while ignoring other evidence in that same report that would provide support to the opinions of Dr. Lynch.

Because of the cherry-picking of evidence by the ALJ, as noted above, the court concludes that the reasons given by the ALJ for discounting the opinions of Dr. Lynch, plaintiff's treating physician, are not supported by substantial evidence. The case shall therefore be remanded in order for the ALJ to fully consider all of the evidence in the treatment records of Dr. Lynch and in the neuropsychological assessment by Dr. Kobes.

In his decision, the ALJ gave "weight" to the opinions of the state agency psychological consultant, Dr. Doxsee, regarding plaintiff's limitations to simple work instructions (R. at 20). However, Dr. Doxsee also opined that plaintiff was moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them (R. at 57). The ALJ, without explanation, did not include this limitation in his RFC findings.  When the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the

opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  On remand, the ALJ shall adhere to this requirement.

The ALJ gave great weight to the opinions of the state agency medical consultant, Dr. Weisburg, regarding plaintiff's physical limitations (R. at 20).  The ALJ's physical RFC findings are similar to those contained in Dr. Weisburg's report (R. at 16, 377-382).  However, Dr. Weisburg's physical RFC assessment contains no meaningful narrative explanation for his findings.

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence.  The court stated that no other medical evidence in the record specifically addressed her ability to work.  The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.
>
> The ALJ's inability to make proper RFC findings "may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file

14

> contains sufficient evidence to assess RFC."
> Soc. Sec. R. 96-8p, 1996 WL 374184, at *5.
> Because the disability hearing is
> nonadversarial, an ALJ is obligated to
> develop the record even where, as here, the
> claimant is represented by counsel. Thompson
> v. Sullivan, 987 F.2d 1482, 1492 (10th
> Cir.1993); accord Hawkins v. Chater, 113
> F.3d 1162, 1164, 1168 (10th Cir.1997). Even
> though Ms. Fleetwood's counsel did not
> request any additional record development,
> the need for additional evidence is so
> clearly established in this record that the
> ALJ was obliged to obtain more evidence
> regarding her functional limitations. See
> Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741; see Martin v. Astrue, Case

No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

In the case before the court, as in Fleetwood, the ALJ

relied on a state agency medical consultant who filled out a

check-the-box evaluation form with no meaningful narrative

explanation for his findings.  There are no other medical

opinions in the record regarding plaintiff's physical

limitations.  Because this case is being remanded for other

reasons, on remand, the ALJ shall make every reasonable effort

to ensure that he file contains sufficient evidence to assess

RFC.  The ALJ should consider recontacting plaintiff's treating

medical sources,  request additional records, or order a

consultative examination.  20 C.F.R. § 404.1520b(c); Fleetwood,

211 Fed. Appx. at 741; Lamb v. Barnhart, 85 Fed. Appx. 52, 57

(10th Cir. Dec. 11, 2003).  The ALJ could also consider having a

medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[1]  In the alternative, the ALJ could request a state agency assessment by a physician who could review the record and provide a written report setting forth their RFC findings and providing a thorough written explanation for their RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 10th day of February 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[1] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept.  Richardson v. Perales, 402 U.S. 389, 408 (1971).  Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision.  Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).